**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ARTURO LLERANDO-PHIPPS, | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : |
| | : |
| THE CITY OF NEW YORK, et al., | : |
| | : |
| Defendants. | : |

**OPINION & ORDER**

**02 Civ. 9939 (RLE)**

---

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. Introduction

On December 18, 2002, Arturo Llerandi-Phipps ("Phipps") brought this action against the City of New York, Detective James Albanese ("Albanese"), Detective Michael Mendez ("Mendez"), John Doe #1 a/k/a Undercover Officer #4999, and police officers John Does #2-10 (collectively, the "Defendants"), claiming that Defendants violated his civil rights under 42 U.S.C. § 1983; his physical liberty and due process rights; and his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution; as well as asserting claims for malicious prosecution, false arrest and false imprisonment, battery, and intentional infliction of emotional distress ("IIED").

In February 2005, Phipps submitted a motion *in limine* to exclude the testimony and report of Defendants' expert, Dr. Richard J. Kassner ("Kassner"). After Defendants submitted their opposition, Phipps submitted another motion *in limine* to exclude: (1) any evidence relating to his alleged prior drug or alcohol use, or, in the alternative, to bifurcate the liability and damages aspects of the trial because the evidence is impermissibly prejudicial to him; (2) any evidence relating to the alcohol and drug use for "other purposes" under Federal Rule of

Evidence ("FRE") 404(b), claiming that it constitutes improper character evidence; and (3) a memorandum written by, and the testimony of, an alleged subordinate of Phipps while both were employees of Defendant City of New York because Defendants failed to identify the witness in sufficient time for Phipps to depose him.

For the reasons that follow, Phipps's motions to exclude Kassner's testimony and report, and his motion to exclude evidence of his alleged prior drug and alcohol abuse, or bifurcate the liability and damages aspects of the trial, are **DENIED**. Phipps's motion to exclude evidence of alleged prior drug or alcohol abuse for "other purposes" under 404(b) is **GRANTED**. Phipps's request to preclude a memorandum written by his previous workplace subordinate is **DENIED**.

Phipps also filed a motion for summary judgment and to dismiss and/or to strike Defendants' fifth and sixth affirmative defenses. This motion is **GRANTED.**

Defendants, for their part, submitted a motion for partial summary judgment to dismiss Phipps's claim for IIED as to all Defendants, and his § 1983 and malicious prosecution claims against Defendants Mendez, Albanese, and Undercover Officer # 4999. The motion is **DENIED** with respect to Phipps's malicious prosecution claim under federal and state law against Mendez, Albanese, and Undercover Officer #4999, and his IIED claim against Defendants Mendez, Albanese, and Undercover Officer #4999. The motion is also **DENIED** with respect to CPLR § 215 for Phipps's IIED and malicious prosecution claims against the individual police officers, and with respect to New York General Municipal Law § 50-e for Phipps's IIED claim as to all Defendants.

Defendants' motion for summary judgment with respect to Phipps's IIED and § 1983 claims against the City of New York is **GRANTED**.

# II.  BACKGROUND

## A.    Factual History, Plaintiff's Claims

On April 6, 2001, Phipps was arrested on Avenue C and East 5th Street in Manhattan for allegedly robbing a nearby bodega.  Memorandum Of Law In Support Of Plaintiff's Motion In Limine to Exclude The Testimony And Report Of Defendants' Porported [sic] Expert, Dr. Richard J. Kassner ("Kassner *In Limine* Mem.") at 2.  Detective Mendez was the arresting officer.  Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def's 56.1 Stmt").  Mendez placed Phipps in a police van with three other individuals who were suspected drug dealers.  Phipps was strip-searched and imprisoned for one night in the "Tombs." Kassner *In Limine* Mem. at 3.  Police later found thirteen glassine envelopes of a controlled substance next to where Phipps had been sitting in the police van, though no drugs had been discovered when Phipps was searched.  Id. at 3.  Phipps was not indicted for any criminal acts, and, on February 22, 2002, the court dismissed all charges against him under the "Speedy Trial Act," New York Criminal Procedure Law § 30.30.  Kassner *In Limine* Mem. at 3; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. SJ Opp.") at 2.

On December 18, 2002, Phipps brought this action based on his April 6, 2001 arrest and subsequent imprisonment.  Memorandum of Law in Support of Plaintiff's Motion *in Limine* to Exclude at Trial (1) Any Evidence Relating to Plaintiff's Alleged Prior Drug or Alcohol Use, and (II) a Memorandum Written by, and the Testimony of an Alleged Subordinate of Plaintiff While Both Were Employed With Defendant City of New York ("Substance *In Limine* Mem.") at 2. On September 23, 2003, Phipps filed an amended complaint, alleging that Mendez, Albanese,

and Undercover Officer #4999 had deprived him of his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution, and asserting malicious prosecution and IIED claims against all Defendants. Phipps voluntarily agreed to discontinue, with prejudice, all of his state law claims for false arrest; false imprisonment; and battery against all Defendants; all of his federal and state law claims against police officers John Does #2-10; and his Fifth Amendment claims against all Defendants.

Phipps claims that police planted the drugs near where he sat in the police van to disguise his unlawful arrest and subsequent imprisonment. Substance *In Limine* Mem. at 3. He asserts that the police did not have probable cause to believe that he had committed or was committing a crime when they arrested him. **Id.** at 4. Additionally, he asserts that, as a result of Defendants' conduct, he suffered severe emotional stress and trauma, which resulted in severe depression and abuse of alcohol and illegal drugs. **Id.** He maintains that, after the incident, he began consuming one liter of cognac a day, cocaine on a monthly basis, and marijuana intermittently. Richard J. Kassner, M.D. Psychiatric Examination ("Kassner Report"), attached to Noah Shapiro Affidavit, dated February 14, 2005 ("Shapiro Aff."), as Exhibit A, at 15. Phipps also claims that he was unable to complete his graduate program at Columbia University, that he was terminated from his employment at the New York State Department of Health ("DOH"), and that his physical and mental health, already compromised by HIV, was further damaged. Substance *In Limine* Mem. at 4.

Defendants contend that Phipps has a history of psychiatric problems and of abusing alcohol and illegal drugs that began before the April 6, 2001 arrest. Memorandum of Law in Opposition to Plaintiff's In Limine Motion to Preclude Dr. Richard J. Kassner's Expert Opinion

Testimony at Trial ("Kassner *In Limine* Opp.") at 8. To support their claim, Defendants offer the testimony and expert report of Kassner, concerning Phipps's overall psychological and psychiatric status. **Id.** at 4, 8. Defendants also propose to offer evidence disputing the cause of Phipps's psychological distress and substance abuse, and the extent of damages allegedly caused by his arrest. **Id.** at 4, 8. In his report, Kassner concludes that Phipps's own misconduct and history of alcohol and substance abuse, not the April 6, 2001 arrest, caused his job loss, persistent alcohol and substance problem, and his deteriorated health condition. Kassner Report at 1, 15. Kassner also indicates that Phipps's conduct and his poor academic record, not the arrest, caused him to discontinue his graduate studies. **Id.** at 17. To support their theory of causation, Defendants offer a memorandum from a workplace subordinate of Phipps complaining of his behavior at work. Declaration of Phillip Kim ("Kim Decl."), Exh. H.

**B.     Motions in Limine**

Phipps argues that Kassner's testimony and expert report fails to meet the requirements of FRE 702 and **Daubert v. Merrell Dow Pharm., Inc.**, 509 U.S. 579 (1993). Kassner *In Limine* Mem. at 5-16. He submits that Kassner lacks the required expertise and factual information to render a reliable opinion, and that Kassner offered a legal conclusion when he stated that there "is no evidence to support Mr. Llerandi-Phipps' claims." **Id.**

Phipps's second motion *in limine* challenges the admissibility of any evidence related to prior alcohol or substance use. He argues that the proposed evidence is irrelevant to the instant action, impermissibly prejudicial to him, and inadmissible character evidence under FRE 404(b). Substance *In Limine* Mem. at 6-10. Phipps also requests that, if the Court allows in the evidence, the liability and damages aspects of the trial should be bifurcated to minimize the prejudice to his

case. **Id.** at 10-11.

Phipps asserts that his co-worker's memorandum should be excluded because Defendants failed to identity the co-worker in sufficient time to depose him or her, the unredacted and redacted versions of the memorandum were not produced to Phipps, and because the memorandum was introduced after the discovery deadline. **Id.** at 11-12; Pl. Substance Reply at 4-5.

Defendants maintain that Kassner's testimony is relevant, reliable, and does not make legal conclusions. Kassner *In Limine* Opp. at 6-16. They assert that Phipps's argument relying on FRE 702 and **Daubert** requirements go to weight, not admissibility. **Id.** at 10. Defendants also assert that they produced an unredacted version of the memorandum of Phipps's co-worker on April 11, 2004, and that they revealed the co-worker's identity to Phipps approximately one year ago, providing more than enough time to depose him. Defendants' Memorandum of Law in Opposition to Plaintiff's In Limine Motion ("Substance *In Limine* Opp.") at 11.

Defendants argue that Phipps's history of alcohol and illegal substance abuse is admissible because: 1) Phipps put the history at issue by claiming that the arrest and prosecution provoked substance abuse and psychological problems; and 2) the drug history is admissible for "other purposes" under FRE 404(b) because it demonstrates Phipps's opportunity, knowledge, and intent to obtain and sell narcotics. **Id.** at 5, 7-8. They maintain that any alcohol and substance abuse is consistent with Phipps's history, and not the result of the April 6, 2001 arrest, and this history undermines his claim that police planted the drugs found near him in the police van. **Id.** at 4-8.

**C.    Motions for Summary Judgment and/or to Strike Defenses**

Phipps also filed a motion for summary judgment and/or motion to strike Defendants'
fifth and sixth affirmative defenses, pursuant to Federal Rules of Civil Procedure ("FRCP")
12(b)(6) and 12(f).  Memorandum Of Law In Support Of Plaintiff's Motion For Summary
Judgment, Motion To Dismiss And/Or Motion To Strike Defendants' Fifth And Sixth
Affirmative Defenses ("Pl. SJ Mem.").  In their motion for partial summary judgment,
Defendants assert an affirmative defense (Phipps characterizes it as the "fifth affirmative
defense") that his malicious prosecution and IIED claims must be dismissed because his claims
are time-barred as against individual police officer Defendants.  Defendants' Memorandum Of
Law In Support Of Their Partial Motion For Summary Judgment ("Def. SJ Mem.") at 5;
Opposition to Plaintiff's Motion for Summary Judgment, Motion to Dismiss, And/Or Motion To
Strike Defendants' Fifth And Sixth Affirmative Defenses ("Def. SJ Opp.") at 2.  In what Phipps
characterizes as the "sixth affirmative defense," Defendants argue that Phipps's IIED claim
should be dismissed as against all Defendants because the notice of claim was untimely.

### 1. The Fifth Affirmative Defense

New York General Municipal Law § 50-i requires claims against the City of New York to
be filed within one year and ninety days of the injury.  **Id.** at 6.  Defendants argue that Phipps's
IIED claim accrued on April 6, 2001, the date of his arrest (claim against the City due by July 6,
2002), and that his malicious prosecution claim accrued on February 22, 2002, the date the
criminal charges against him were dismissed (claim against the City due by May 22, 2003).  Def.
SJ Mem. at 5.  Phipps filed his complaint against the City on December 18, 2002, but did not
amend his complaint to name the individual police officers with regard to his IIED and malicious

prosecution claims until September 29, 2003. **Id.** at 5-6. Defendants conclude that the IIED claim is untimely for all Defendants and the malicious prosecution claim is untimely with respect to the individual officers.

Phipps disagrees with Defendants on when the statute of limitations begins to run. Pl. SJ Mem. at 5. Because he did not know who the individual officers were who participated in his arrest when he filed his complaint, Phipps argues that CPLR § 203 should apply to bring his claims within the statute of limitations because the amendments adding the officers relate back to his original complaint. Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion For Summary Judgment ("Pl. SJ Opp.") at 3.

### 2. The Sixth Affirmative Defense

Defendants maintain that the IIED claim accrued on April 6, 2001, the arrest date, and that Phipps failed to satisfy New York General Municipal Law § 50-e, which requires a notice of claim to be filed within ninety days, and the action to be commenced within one year and ninety days. Def. SJ Opp. at 3. Phipps argues that his claim is timely because he filed his Notice of Claim on May 22, 2002, within ninety days of February 22, 2002, when the prosecution ended, and then commenced his action on December 18, 2002, within one year of that time. Pl. SJ Mem. at 9-10.

### 3. Public Policy Immunity

Defendants also filed a motion for partial summary judgment to dismiss Phipps's IIED claim as to all Defendants on public policy grounds, and to dismiss his § 1983 claims and malicious prosecution claims against Defendants Mendez, Albanese, and Undercover Officer # 4999 on the basis of failure to state a cause of action for municipal liability.

### III. DISCUSSION

**A.**     **Motions *In Limine***

Motions *in limine* allow the Court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.  *See* **Luce v. United States**, 469 U.S. 38, 41 n.4 (1984); **Palmieri v. Defaria**, 88 F.3d 136, 141 (2d Cir. 1996).

### 1. Kassner's Testimony and Expert Report

FRE 702 provides that, unless barred by other evidence rules, expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  FRE 702.  Furthermore, the witness "qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods to the case."  **Id.**  In deciding whether to admit the testimony of a proposed expert, the court therefore must determine whether the testimony (1) relates to "scientific knowledge" and (2) will "assist the trier of fact to understand or determine a fact in issue."  **Daubert v. Merrell Dow Pharm., Inc.**, 509 U.S. 579, 592 (1993).

Phipps asserts that Kassner's testimony and expert report should be excluded at trial primarily because Kassner does not have the required expertise or factual information to render a reliable opinion, and because he makes legal conclusions when he states that there "is no evidence to support Mr. Llerandi-Phipps' claims."  Kassner *In Limine* Mem. at 5-16.  As a threshold matter, Kassner is qualified as an expert because he possesses general expertise in the area of psychology.  Moreover, his report is based on an evaluation of the record, and satisfies

FRE 702.  Phipps has placed his psychological and emotional well-being in issue and Kassner's

testimony and report concerning Phipps's psychological history is probative, and would assist the

jury in assessing his claim.  Finally, the statement that "there is no evidence to support Mr.

Llerandi-Phipps' claims" is not a legal conclusion.  Rather, Kassner is expressing an opinion that

Phipps's alleged history of substance abuse and misconduct, not the April 6, 2001 arrest, led to

his excessive use of alcohol and illegal drugs, his termination from work, and his discontinuation

of graduate studies.  Accordingly, Phipps's motion *in limine* to exclude Kassner's testimony and

expert report is **DENIED**.

### 2. Evidence of Phipps's Alleged History of Alcohol and Illegal Drug Abuse

FRE 402 provides that "[e]vidence which is not relevant is not admissible."  FRE 401

defines relevant evidence as that which has "any tendency to make the existence of any fact that

is of consequence to the determination of the action more probable or less probable than it would

be without the evidence."  However, even if evidence is relevant, it may be excluded if its

probative value is outweighed by its potential to unduly prejudice a party.  FRE 403.  Relevant

evidence of prior bad acts may also be excluded if offered to show that a person has acted in

conformity therewith.  FRE 404(b).  Evidence of prior bad acts may nonetheless be admissible

for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident,"  FRE 404(b), provided that it is not barred by other

Federal Rules of Evidence, such as FRE 403.

Phipps argues that the Court should exclude evidence concerning his alleged history of

alcohol and illegal drug abuse because the information is irrelevant, impermissibly prejudicial,

and inadmissible character evidence under 404(b).  Substance *In Limine* Mem. at 6-10.  This

argument is meritless. Central to Phipps's claim for damages is that the April 6, 2001 arrest and prosecution forced him to abuse drugs and alcohol. Evidence of a history of such abuse is relevant and highly probative to this case because it bears on the issue of causation with respect to Phipps's excessive intake of substances after the arrest. Accordingly, Phipps's motion *in limine* with respect to the admission of evidence pertaining to his prior alcohol and drug use is **DENIED**.

Furthermore, Phipps's motion to bifurcate the liability and damages aspects of the trial is also **DENIED** because Phipps's alcohol and substance history pertains to both liability and damages, particularly with respect to the IIED claim. "The decision to bifurcate a trial into liability and damages phases . . . is 'firmly within the discretion of the trial court under Fed.R.Civ.P. 42(b).'" **Katsaros v. Cody**, 744 F.2d 270, 278 (2d Cir. 1984) (*citing* **In re Master Key Antitrust Litig.**, 528 F.2d 5, 14 (2d Cir. 1975)). Where evidence on liability and damages is intertwined, bifurcation is not appropriate. *See* **Vichare v. AMBAC Inc.**, 106 F.3d 457, 466 (2d Cir. 1996). Any possible prejudice to Phipps at trial can be resolved with a limiting instruction to the jury. **Id.** at 467.

Defendants' proposed use of the evidence for "other purposes" under FRE 404(b), that is, to demonstrate that Phipps had opportunity, knowledge, and intent to obtain and sell narcotics, is not, however, admissible. All charges against Phipps were dropped, including those related to the possession and sale of narcotics. Therefore, it is unnecessary to use his history of alcohol and substance abuse for Defendants' proposed other purposes. Accordingly, Phipps's motion *in limine* to exclude the evidence for other purposes under 404(b) is **GRANTED**.

### 3. Memorandum of Phipps's Co-Worker

Phipps asserts that the memorandum of his workplace subordinate should be excluded at trial because Defendants failed to identity the co-worker in sufficient time to depose him, the unredacted and redacted versions of the memorandum were not produced to Phipps, and because the memorandum was introduced after the discovery deadline. Substance *In Limine* Mem. at 11-12; Pl. Substance Reply at 4-5. However, Phipps argues that the arrest, not any conduct of his own, led to his termination from the New York State Department of Health. Substance *In Limine* Mem. at 4. Therefore, the memorandum of a co-worker, complaining about Phipps's workplace misconduct, may or may not be admissible depending on the other evidence developed at trial. Accordingly, Phipps's motion *in limine* with respect to the memorandum of his workplace subordinate is **DENIED**. The parties are instructed to arrange for the deposition of the witness, upon Phipps's request, within fourteen days of this Opinion and Order.

**B.      Motions for Summary Judgment**

Summary judgment is appropriate when no genuine issues of material fact exist; therefore, the moving party is entitled to judgment as a matter of law. **D'Amico v. City of New York**, 132 F.3d 145, 149 (2d Cir. 1998), *cert. denied*, 542 U.S. 911 (1998). The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). In evaluating a motion under FRCP 56, the court reviews the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, to show that there is no genuine issue of material fact." **Id.** at 322. The Court also reviews "the evidence in the light most favorable to the party against whom summary judgment is sought and [draws] all reasonable inferences in his favor." **L.B. Foster Co. v. America Piles Inc.**, 138 F.3d 81, 87 (2d Cir. 1998). However, a nonmoving party cannot

rely on conclusory allegations or speculation, and "may not rest on the pleadings[,] but must further set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions showing a genuine issue exists for trial." **Cifarelli v. Village of Babylon**, 93 F.3d 47, 51 (2d Cir. 1996). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986). Furthermore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Id.** at 249-50 (citations omitted).

### 1. Phipps's IIED Claim

New York law provides that for an actionable claim of IIED, Phipps must demonstrate: "1) extreme and outrageous conduct; 2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; 3) a causal connection between the conduct and the injury; and 4) severe emotional distress." **Stuto v. Fleishman**, 164 F.3d 820, 827 (2d Cir. 1999); **Howell v. New York Post Co.**, 81 N.Y.2d 115, 121 (1993). Public policy, however, bars IIED claims against government agencies, including New York City and State. **Lauer v. City of New York**, 240 A.D.2d 543 (2d Dep't 1997). Therefore, Phipps's IIED claim against the City of New York is barred, and the motion for summary judgment is **GRANTED** with respect to this Defendant.

With respect to Defendants Mendez, Albanese, and Undercover Officer #4999, IIED may be "'invoked only as a last resort' when traditional tort remedies, [such as malicious prosecution,] are unavailable." **Moore v. City of New York**, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (*quoting* **McIntyre v. Manhattan Ford, Lincoln Mercury, Inc.**, 256 A.D.2d 269, 270 (1st Dep't 1998)). "[N]o intentional infliction of emotional distress claim will lie

where the conduct underlying the claim falls within the ambit of traditional tort liability."

**Moore**, 219 F. Supp. 2d at 339 (*quoting* **Hansel v. Sheridan**, 99 F. Supp. 69, 75 (N.D.N.Y. 1998)).  Phipps argues that the officers falsely arrested and jailed him, which resulted in his employment termination from Defendant City of New York and his deteriorated health. Defendants have failed to demonstrate that there is overlap between Phipps's claims and remedies that are available under traditional tort law.  Accordingly, Defendants' motion for summary judgment with respect to Phipps's IIED claim against Defendants Albanese, Mendez, and Undercover Officer #4999 is **DENIED**.

### 2. Phipps's § 1983 Claim Against the City of New York

To prevail in an action against the City of New York under 42 U.S.C. § 1983, Phipps must show that a municipal policy or custom caused the deprivation of his constitutional rights. **Monell v. Dep't of Soc. Servs.**, 436 U.S. 658, 690-91 (1978); **Sarus v. Rotundo**, 831 F.2d 397, 400 (2d Cir. 1987).  Defendants accurately note that a single incident of unconstitutional activity is insufficient to impose municipal liability, unless plaintiff demonstrates that the incident resulted from an unconstitutional municipal policy, Def. SJ Mem. at 7-8; **City of Oklahoma City v. Tuttle**, 471 U.S. 808, 823-24 (1985).  Furthermore, misconduct by City employees does not trigger *respondeat superior* liability upon the City, unless the City inflicts injury upon the plaintiff.  **City of Canton, Ohio v. Harris**, 489 U.S. 378, 385 (1989); **Monell**, 436 U.S. at 694.

Phipps alleges an ongoing wrong beginning with his arrest and continuing as Defendants brought charges but refused to drop them, subjecting him to continued harm.  First Amended Complaint ("Am. Compl.") ¶ 24.  However, this experience is still rooted in a single incident, which is not sufficient for a **Monell** claim "unless proof of the incident includes proof that it was

caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved." **Tuttle**, 471 U.S. at 824. As for a municipal policy, Phipps alleges his arrest is part of a custom of racial discrimination and profiling. Am. Compl. ¶ 24, 33. However, "conclusory allegations of racial profiling" are insufficient to establish that an unconstitutional policy exists, or that there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." **Bantum v. City of New York**, 2001 WL 705889, \*3 (S.D.N.Y. June 21, 2001) (*quoting* **City of Canton**, 489 U.S. at 385). Phipps has not shown there are genuine issues of material fact which could lead to the conclusion that there is an unconstitutional municipal policy which contributed to his injuries or that the City directly caused him harm. Accordingly, Defendants' motion for partial summary judgment with respect to Phipps's 42 U.S.C. § 1983 claim against the City of New York is **GRANTED**.

### 3. Phipps's Malicious Prosecution Claim Against Mendez, Albanese, and Undercover Officer #4999

There are four elements necessary to state a claim for malicious prosecution under New York state law: 1) the defendant initiated a criminal proceeding; 2) that proceeding ended in plaintiff's favor; 3) the defendant lacked probable cause; and 4) the defendant acted with malice. **Cook v. Sheldon**, 41 F.3d 73, 79 (2d Cir. 1994) (*citing* **Martin v. City of Albany**, 396 N.Y.S.2d 612, 614 (1977)). Defendants argue Phipps cannot establish the first and fourth elements.

For laypersons who are defendants in cases of malicious prosecution, courts have held that simply reporting a crime to the police and serving as a witness does not meet the first

element of initiating a criminal proceeding.  **Rohman v. New York City Transit Auth.**, 215

F.3d 208, 217 (2d Cir. 2000) (*citing* **DeFilippo v. County of Nassau**, 583 N.Y.S.2d 283, 284

(App. Div. 2d Dep't 1992)); **Raysor v. Port Auth. of New York & New Jersey**, 768 F.2d 34,

38-39 (2d Cir. 1985); **Viza v. Town of Greece**, 463 N.Y.S.2d 970, 970 (App. Div. 4th Dep't

1983).  However, the standard is different for law enforcement officers.  In malicious prosecution

cases against police officers, plaintiffs have met this first element by showing that officers

brought formal charges and had the person arraigned, **Cook**, 41 F.3d at 79, or filled out

complaining and corroborating affidavits, **Carter v. Port Auth. of New York & New Jersey**,

2004 WL 2978282, *8 (S.D.N.Y. Dec. 20, 2004), or swore to and signed a felony complaint.

**Cox v. County of Suffolk**, 827 F. Supp. 935, 938 (E.D.N.Y. 1993).

    As Phipps points out, applying the layperson standard to the police would mean that law

enforcement officers would never be liable for malicious prosecution.  Pl. SJ Opp. at 7.

Detective Albanese reported that he found the evidence of drugs in the police car to Detective

Mendez, who signed the accusatory instrument.  Def. SJ Mem. at 10.  A jury could find the

officers were sufficiently involved in initiating the criminal proceeding subsequently brought

against Phipps.

    Defendants argue the ADA's independent decision to prosecute cuts off the liability of

the officers.  "Although there is a presumption that a prosecutor exercises independent judgment

in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be

held liable for malicious prosecution 'when a police officer creates false information likely to

influence a jury's decision and forwards that information to prosecutors.'"  **Brome v. City of**

**New York**, 2004 WL 502645, *5-6 (S.D.N.Y. Mar. 15, 2004) (*citing* **Ricciuti v. New York City**

**Transit Auth.**, 124 F.3d 123, 130 (2d Cir. 1997)).  Phipps has made exactly such allegations.  Am. Compl. ¶ 21-26.

To support their argument that the ADA's actions "broke the causal chain," Defendants rely on **Williams v. City of New York**, 2003 WL 22434151, *6 (S.D.N.Y. Oct. 23, 2003) (*citing* **Townes v. City of New York**, 176 F.3d 138, 147 (2d Cir.), *cert denied*, 528 U.S. 964 (1999)).  Def. SJ Opp. at 10.  However, the issue in **Williams** was whether the plaintiff could overcome the presumption of probable cause, established by the grand jury indictment.  **Williams**, 2003 WL 22434151 at *6.  In contrast, Phipps alleges there was no probable cause for arrest, and Defendants have not challenged that aspect of his case.  The **Williams** court found the officer in that case would not be liable unless there was evidence she misled the prosecutor.  **Id.**  Finding no such evidence to overcome the presumption of probable cause, the **Williams** court granted summary judgment.  Here, Phipps has alleged misleading actions by Defendant officers, and those facts are still in dispute.

As for the fourth element of malice, the Second Circuit defines malice for purposes of a malicious prosecution claim as "wrong or improper motive, something other than a desire to see the ends of justice served."  **Lowth v. Town of Cheektowaga**, 82 F.3d 563, 573 (2d Cir. 1996) (*quoting* **Nardelli v. Stamberg**, 406 N.Y.S.2d 443, 445 (1978)).  This element is closely related to the lack of probable cause requirement.  *See* **Babi-Ali v. City of New York**, 979 F. Supp. 268, 277 (S.D.N.Y. 1997) (*citing* **Post v. Elser**, 1996 WL 406843, *8 (N.D.N.Y. July 19, 1996)).  "In most cases, the lack of probable cause--while not dispositive--'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'"  **Lowth**, 82 F.3d at 573 (*quoting* **Conkey v. State**, 427 N.Y.S.2d 330, 332 (App. Div.

17

4th Dep't 1980)).  Here, a jury could infer malice from a lack of probable cause, which is sufficiently in dispute to survive summary judgment.  ***See* Fowler v. Robinson**, 1996 WL 67994, *9 (N.D.N.Y. Feb. 15, 1996).  Therefore, Defendant's summary judgment motion as to Phipps's malicious prosecution claim is **DENIED**.

### 4. Phipps's IIED Claim under State Law with Respect to New York State's Notice of Claim Requirements

State notice of claim statutes apply to state law claims brought to a federal court.  **Hyde v. Arresting Officer Caputo**, 2001 WL 521699, *4 (E.D.N.Y. May 11, 2001).  New York General Municipal Law required that Phipps file a notice of claim with respect to his state law claims within ninety days after the claim arose and commence the action within one year and ninety days from the date the cause of action accrued.  New York General Municipal Law §§ 50-i, 50-e; **Hyde**, 2001 WL 521699 at *4; **Lieber v. Village of Spring Valley**, 40 F. Supp. 2d 525, 533 (S.D.N.Y. 1999).  If Phipps's IIED claim accrued on February 22, 2002, when all criminal charges against him were dismissed, his claim is timely.  However, if Phipps's IIED claim accrued on April 6, 2001, the date of arrest, as Defendants claim, his claim is time-barred.

Some courts have, without extensive analysis, held that IIED claims similar to Phipps's accrue on the date of arrest.  ***See* Covington v. City of New York**, 1999 WL 739910, *5 (S.D.N.Y. Sept. 22, 1999) (IIED claim accrued on date of arrest).  ***See also* Diamond v. Strassberg**, 751 F. Supp. 1152, 1154 (S.D.N.Y. 1990) (IIED claim accrued when civil court action was filed as plaintiff's complaint alleged his distress began at that time).  However, other courts have cautiously begun to apply the continuing wrong doctrine to claims of intentional infliction of emotional distress.  ***See* Lucas v. Novogratz**, 2002 WL 31844913, *7 (S.D.N.Y.

Dec. 18, 2002); **Gonzalez v. Bratton,** 147 F. Supp. 2d 180, 193-94 (S.D.N.Y. 2001); **Bonner v. Guccione**, 916 F. Supp. 271, 277 (S.D.N.Y. 1996); **Neufeld v. Neufeld**, 910 F. Supp. 977, 983 (S.D.N.Y. 1996); **Abdullajeva v. Club Quarters, Inc.**, 1996 WL 497029, *7 (S.D.N.Y. Sept. 3, 1996).

> [F]or the statute of limitations to be tolled under the theory of continuing wrongs, the acts within the statute of limitations must be sufficient to make out a claim for intentional infliction of emotional distress, "independent of those acts that are part of the offending course of conduct but fall outside the time bar."

**Mariani v. Consol. Edison Co. of New York, Inc.**, 982 F. Supp. 267, 273-74 (S.D.N.Y. 1997) (*quoting* Santan-Morris v. New York Univ. Med. Ctr., 1996 WL 709577, *5 (S.D.N.Y. Dec. 10, 1996)). *But see* **Montefusco v. Nassau County**, 39 F. Supp. 2d 231, 238 (E.D.N.Y. 1999) (rejecting continuing wrong doctrine as applied to IIED claim based on school board actions which culminated in a hearing before a panel).

Phipps's arrest on April 6, 2001, and his allegation that the arrest was without probable cause, is at the center of his claim, but is inherently intertwined with subsequent events. Phipps was not given notice to testify before a grand jury until August, 9, 2001. Pl. SJ Mem. at 4. The grand jury was adjourned when Defendants' witnesses did not appear, but the charges were not finally dismissed until February 22, 2002. **Id.** Lack of probable cause for the arrest (an allegation Defendants do not dispute) was not determined until that point. What took place between his arrest, the grand jury adjournment, and the time the charges were dropped remains unclear. The "last actionable act," in this case, is the continuation of the prosecution despite the lack of probable cause. **Neufeld**, 910 F. Supp. at 983. Phipps could not have brought his claim until the charges against him were finally dropped, that is, February 22, 2002.

Using February 22, 2002, as the accrual date for his claim of intentional infliction of emotional distress, Phipps complied with the New York General Municipal Law by filing his notice of claim on May 22, 2002 and commencing his action on December 18, 2002. Pl. SJ Mem. at 10. Accordingly, Phipps's motion to dismiss Defendants' sixth affirmative defense is **GRANTED**, and Defendants' motion to dismiss Phipps's IIED claim as time-barred by New York General Municipal Law § 50-e is **DENIED**.

### 5. Phipps's IIED and Malicious Prosecution Claims with Respect to New York State's Statute of Limitations

Using February 22, 2002, as the start date, Phipps had until May 23, 2003, under the New York General Municipal Law, to file complaints against the individual police officers. Phipps's amended complaint, which named the officers, was not filed until September 29, 2003, after he learned of the names and identities of the police officers involved in his April 6, 2001 arrest. Pl. SJ Opp. at 3. CPLR § 203 allows Phipps to amend his complaint to add the named police officers after the statutory period has passed, provided that: (1) both the amended and the original complaint arise out of the "same conduct, transaction or occurrence; (2) the new part[ies] are united in interest with the original defendant[s], and by reason of that relationship can be charged with such notice of the institution of that action that he [or she] will not be prejudiced in maintaining [a] defense on the merits; and (3) the new part[ies] knew or should have known that, but for an excusable mistake by [Phipps] as to the identity of the proper parties, the action would have been brought against him [or her] as well." **Buran v. Coupal**, 87 N.Y.2d 173, 178 (1995). The third element of excusable mistake is no longer required under New York Law. **Id.** at 179. Phipps has met the requirements of CPLR § 203 because the claims against the individual police

officers and the other named Defendants occurred out of the same April 6, 2001 arrest, and because the individual officers are "united parties in interest" with their employer, Defendant City of New York. Accordingly, Phipps's motion to dismiss Defendants' fifth affirmative defense is **GRANTED**, and Defendants' partial summary judgment motion to dismiss Phipps's IIED and malicious prosecution claims as time-barred by CPLR § 215 against the individual police officers is **DENIED**.

## IV. SUMMARY

Given the rulings outlined above, Phipps's remaining claims are 1) a state law claim for intentional infliction of emotional distress against Defendants Albanese, Mendez, and Undercover Officer #4999, and 2) a malicious prosecution claim under federal and state law against those same Defendants.

**SO ORDERED this 29th day of September 2005**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**